IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NAUTILUS INSURANCE COMPANY, an Arizona Corporation, | ) ) ) | CIVIL NO. 05-00662 SOM/KSC |
| Plaintiff, | ) ) ) | ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT |
| vs. | ) ) | |
| LINDA BLAGRAVE, a Hawaii resident, individually and doing business as KAHUKU-KAI RANCH, and KAHUKU-KAI HORSES, and DOES 1-50, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| LINDA BLAGRAVE, a Hawaii resident, | ) ) ) | |
| Counter- Claimant, | ) ) ) ) | |
| vs. | ) ) | |
| Nautilus Insurance Company, an Arizona Corporation, | ) ) ) | |
| Counter- Defendant. | ) ) ) ) | |

ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

I.      INTRODUCTION.

        This is a diversity action involving insurance coverage.  Linda Blagrave purchased commercial liability insurance from Nautilus Insurance Company.  The policy applied to real property that Blagrave described as "vacant land" and on which she kept horses.  Blagrave moves for summary judgment,

arguing that Nautilus had a duty to defend and indemnify her with respect to claims brought in a now-settled state court suit by an injured horseback rider and her husband.  Nautilus also moves for summary judgment, arguing that the "vacant land" covered by the policy did not include a horse boarding or horse riding operation.  Nautilus additionally seeks rescission and reformation of the insurance policy, as well as reimbursement for the amounts it paid to the injured rider and her husband and to the attorneys who defended Blagrave in the suit.  Nautilus also seeks summary judgment on Blagrave's counterclaims.  Blagrave has filed a countermotion for summary judgment, arguing that she is entitled to summary judgment on Nautilus's claims for breach of conditions and reimbursement.

　　　　The court denies the motions for summary judgment, as questions of fact about whether Blagrave made a misrepresentation in her insurance application put the enforceability of the policy in issue.  What duties and obligations the insurer owed under the policy is a question that need not be resolved unless the policy is enforceable.  If the trier of fact determines at trial that the insurance policy is valid, the court will entertain motions at that time on whether Nautilus had a duty to defend and/or indemnify Blagrave under the insurance policy, as well as the other issues raised by these motions.

The court does not decide Nautilus's reformation claim as discussed in its motion, as that claim was not pled in the Complaint.

The court also denies Nautilus's motion to the extent it seeks summary judgment on Blagrave's bad faith counterclaim, as there is a question of fact as to whether Natilus unreasonably delayed coverage by falsely asserting that the underlying claim had not occurred during the policy period.

II.     BACKGROUND FACTS.

Griffing Swan & Lai Insurance Brokers, Inc. ("GSL"), acted as Linda Blagrave's broker in obtaining commercial liability insurance for a number of years. See, e.g., Exhibits B-22, B-23, and B-24 (insurance policies in effect in 1997 and 1998). Since at least October 1997, GSL appears to have known that Blagrave had a horse ranch on the property in issue. See Ex. B-21 (letter from Rose C. Lalau of GSL dated Oct. 2, 1997, indicating that she saw the ranch and that she enjoyed riding Blagrave's horse); Ex. B-25 (letter from Rose C. LaLau to Blagrave dated March 11, 1997, noting that the enclosed insurance policy covered "12 acres of vacant land . . . utilized as a horse pasture"). Blagrave started offering horse rides from the property in 1999, after the date of Lalau's letters, but Blagrave says GSL was aware of the horse rides. See Declaration of Linda Blagrave (Oct. 26, 2006) ¶ 15 ("To the best of my recollection

and belief, Rose was also aware that I was conducting trail rides on the property after 1999."); see also Transcript of Testimony of Linda Blagrave (Apr. 18, 2006) ("Blagrave Depo.") at 102-03 (indicating that Rose LaLau was "aware" of the trail riding operations).

Over the years, GSL helped Blagrave obtain insurance policies that variously described her property as "14.37 ACRES OF PASTURE LAND, SITUATED IN KAHUKU, HI 96731," see Ex. B-22 (effective 10/01/97 to 10/01/98); "10 Acres Pastoral (Vacant) Land Located in Kahuku, HI," see Ex. B-23 (effective 10/1/97 to 10/31/97); and "Vacant Land -- Not-For-Profit," see Ex. B-24 (effective 10/1/98 to 10/1/99). According to Blagrave, the insurance policies obtained between 1996 and 2003 all described the property as "vacant land." Blagrave Decl. ¶ 17. Blagrave says that she herself did not refer to her property as "vacant land" in discussions with GSL. Rather, she says she thought that the term "vacant land" was "possibly an insurance term" that did not "restrict[] coverage for [her] in any way." Id. ¶¶ 22, 28. She also says that, because one of her policies described "pastoral" land as "vacant land," she thought the two terms were the same and that "vacant land" merely meant that it did not have any permanent structures on it. Blagrave Depo. at 101-02. Some past insurance companies had charged her an inspection fee, see Blagrave Decl. ¶ 23, so Blagrave assumed that those companies had

inspected her property and had agreed that the term "vacant land" covered her use of the property. See id. ¶ 23.

On or about July 9, 2003, GSL helped Blagrave submit an application for commercial insurance to Nautilus Insurance Company through its agent, Triad Insurance Agency. See Ex. 2 (attached to Stipulated Joint Concise Statement), Exs. B-5 and B-6. This application described the "NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS BY PREMISE(S)" as "Vacant Land." See Ex. 2. In the application, Blagrave answered "No" to questions asking whether she loaned or rented machinery or equipment to others, whether she provided recreation facilities, and whether she sponsored sporting or social events. Id. Blagrave's responses, including the "vacant land" description, were typed on the application form for her by GSL. See Blagrave Decl. ¶ 25.

Nautilus issued Blagrave a Commercial Lines Policy, effective October 1, 2003, to October 1, 2004. See Ex. 3 (attached to Stipulated Joint Concise Statement). Like Blagrave's earlier insurance policies, Nautilus's policy described the insured property as "VACANT LAND" and "Vacant land -- other than not-for-profit -- (Including products and/or completed operations)". Id. at B00063 and B00070. The policy states that Nautilus "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily

injury' or 'property damage' to which this insurance applies." Id. at B00071. "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Id. at B00080. The "bodily injury" must be the result of an accident. Id. at B00071 and B00081.  Nautilus has "the right and duty to defend the insured against any 'suit' seeking [covered 'bodily injury'] damages." Id. at B00071.

The Nautilus insurance policy also has an endorsement ("LIMITATION OF COVERAGE DESIGNATED PREMISES OR PROJECT") that describes the insured premises as "VACANT LAND -- OTHER THAN NOT-FOR-PROFIT." Id. at B00084.  That endorsement states that the "Insurance applies only to 'bodily injury' . . . arising out of: 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises." Id.

It is undisputed that a lawsuit was filed against Blagrave in Hawaii state court arising out of injuries received by Lisa S. Wong during a horseback ride on a beach near Blagrave's property in Kahuku, Hawaii.  See Complaint, 05-1-0405-03 GWBC (attached to Stipulated Joint Concise Statement as Exhibit 6).  This state-court tort complaint alleges that, on October 11, 2003 (which is during the period covered by Nautilus's insurance policy), Blagrave, individually and doing

6

business as Kahuku-Kai Ranch and Kahuku-Kai Horses, operated a horse ride in Kahuku. Id. ¶¶ 2-3. That complaint alleges negligence that caused Wong severe injuries when the horse she was on reared up and fell backwards onto her. Id. ¶ 7.

Blagrave tendered the state-court lawsuit to Nautilus, which initially denied coverage on the ground that the accident had not occurred during the policy period. See Ex. B-10 (letter from Katie Humphrey to Blagrave (Apr. 28, 2005)). On May 19, 2005, Blagrave's attorney, Peter W. Olson, wrote to Nautilus, asking Nautilus to reconsider its position because the accident had occurred during the policy period. See Ex. B-11 (letter from Peter W. Olson to Katie Humphrey (May 19, 2005)). Months later, on October 19, 2005, Nautilus agreed to defend Blagrave under a reservation of rights. See Letter from Amy Nechamkin of Nautilus to Blagrave's attorney, Peter W. Olson (October 19, 2005) (attached as Ex. 8 to stipulated joint exhibits).

The suit was assigned to the Court Annexed Arbitration Program ("CAAP"). On April 26, 2006, a CAAP arbitration award was issued against Blagrave for a total amount of $61,382.89. Nautilus paid Blagrave's attorney $20,502.91 to defend Blagrave. See Stipulated Concise Statement of Facts (Oct. 25, 2006) ¶¶ 21-24. It appears that Nautilus has already paid the $61,382.89, as Nautilus has submitted evidence of its intention to pay that amount, see Letter from Patrick L. Blair to Peter W. Olson (May

11, 2006) (attached to Nautilus's Concise Statement as Ex. J), and as a stipulation for dismissal of the suit has been filed. See Stipulated Concise Statement of Facts (Oct. 25, 2006) ¶ 25. Nautilus settled the suit over Blagrave's objection. See Ex. B-20 (letter from Patrick L. Blair to Peter W. Olson (May 15, 2006)); Ex. B-19 (letter from Peter W. Olson to Patrick L. Blair (May 12, 2006)).

III.   SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir.

2000). The burden initially falls upon the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything. In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything. Nissan Fire, 210 F.3d at 1102-03. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter, 419 F.3d at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); accord Addisu, 198 F.3d at 1134 ("There must be enough

doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

"[A]t least some 'significant probative evident'" must be produced. T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134. "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587).

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631. In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party. Porter, 419 F.3d at 891. The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage. Id. However, inferences may be drawn from underlying facts not in

dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

IV.     ANALYSIS.

      A.     There is A Question of Fact as to Whether Nautilus is Entitled to Rescind the Insurance Policy.

Before determining whether Nautilus had a duty to defend or indemnify Blagrave in the suit in the Hawaii state courts, this court must first determine whether there is an enforceable contract. Nautilus argues that it is entitled to rescind the insurance policy pursuant to section 431:10-209 of the Hawaii Revised Statutes. That section states that "[a] misrepresentation shall not prevent a recovery on the policy unless made with actual intent to deceive or unless it materially affects either the acceptance of the risk or the hazard assumed by the insurer." See also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 958 (9th Cir. 1994) ("In order to rescind [the] policy, [the insurer] is required to show that her statements were misrepresentations and that they either were made with intent to deceive or materially affected acceptance of the risk or the hazard assumed by [the insurer].").

Both Nautilus and Blagrave move for summary judgment on Nautilus's rescission claim. Nautilus says that the description in Blagrave's insurance application of her property and business as "vacant land" was a material misrepresentation of the nature

11

of the risk she sought to insure.  Nautilus says that the land was not vacant and that a trail riding business is inconsistent with "vacant land."  In making this argument, Nautilus assumes a definition of "vacant land."  That assumption is not warranted, and there is an issue of fact as to whether Blagrave made any misrepresentation, a prerequisite to rescission of a contract.  See Restatement (Second) of Contracts § 164 cmt. a (1981) ("Three requirements must be met [to make a contract voidable] in addition to the requirement that there must have been a misrepresentation . . . .").

The application contained the heading "NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS BY PREMISE(S)," with a space for a responsive description.  See Ex. 2.  The heading could certainly have been clearer.  Nautilus could have been equating a "business" with the operation conducted at each property for which insurance was sought.  Alternatively, the question could have offered the applicant the choice of either describing the applicant's business or describing the property's "operation," which might not be the same thing.  The words "by premise(s)" may have been attached to "description" and may have sought to elicit a premise-by-premise description of operations.  Or the words "by premise(s)" may have been attached to "operations" and may have, somewhat confusingly, sought to elicit a statement of the premise's "operations," which might not be the same as operations

12

conducted at the premise.  In other words, it is unclear whether describing how land itself operates ("operations by premise(s)") is the same as describing operations premise-by-premise.  On the present record, the court cannot say that it is undisputed that Blagrave made a misrepresentation when she answered "Vacant Land."  The insurance policy application could have easily asked for more information.  It could, for instance, have asked Blagrave to describe with particularity the exact nature of any business that was conducted on the land and designed to generate revenue.  In asking a single, unclear question, Nautilus bore the risk that insurance applicants might interpret the question in different ways.

Although Nautilus confidently asserts that "vacant land" can only mean open, undeveloped land, the strength of Nautilus's conviction, by itself, is insufficient to give "vacant land" that meaning as a matter of law.  Other insurers, some of which had presumably inspected the property because they charged Blagrave an inspection fee, had described Blagrave's property as "vacant land."  One of the policies even equated "pastoral" land with "vacant land," supporting Blagrave's assertion that she thought "vacant land" was a term with a special meaning in the insurance industry.  Although an innocent misrepresentation may be sufficient to justify rescission of a contract, see 27 Richard A. Lord, Williston on Contracts § 69:49 (4th ed. West 2006), the facts before this court do not demonstrate as a matter of law

13

that the "vacant land" designation was a misrepresentation at all. Blagrave may have accurately used "vacant land" to describe her property, which did not have permanent structures on it, although it did have minor improvements on it.

In arguing that Blagrave's 10-acre property was not "vacant land," Nautilus points to her boarding of horses on the property, see Deposition of Linda Blagrave (Apr. 18, 2006) at 22; the presence on the property of a square container with a roof and sides, used as a barn at one time, id. at 28; fences dividing the property into nine areas, id. at 36; slanted roofs with gutters placed on telephone poles on the property to provide Blagrave's horses with shady areas and water, id. at 37; and a storage container (8' x 20' x 24') for the horses' food, saddles, and bridles. Id. at 37-38. There is no authority establishing indisputably that these improvements prevented the property from being "vacant land."

The "vacant land" designation on the application form was typed in by GSL and forwarded to Blagrave for her signature. GSL is an insurance broker presumably knowledgeable about insurance industry standards and how to properly describe property or a business in an insurance policy application. As a GSL agent knew of some of the circumstances Nautilus points to, GSL's description of Blagrave's property or business as "vacant

14

land" raises, at a minimum, a question of fact as to whether Blagrave misrepresented her land.

At the hearing, the court discussed with Nautilus the likelihood that what is "vacant land" might be a point on a continuum and difficult to specifically define. Nautilus noted that, in California, whether land is "vacant land" turns on whether a person derives financial benefit from it. Yet there is substantively no difference between, say, a camp on a property operated for a fee and a free camp on the same property. In either case, the risk to the insurer insuring the camp would be identical. If profit is determinative, only the latter would qualify as "vacant land." Similarly, a person who holds weekly dog training classes for a fee in a large, open, undeveloped field presents the same risk to an insurer as one who offers such classes for free, yet only the latter occupies "vacant land" under a "for profit" analysis. Hawaii law does not presently make that distinction for insurance purposes, and an issue of fact exists as to whether Blagrave's statement as to "vacant land" was accurate. Neither party is entitled to summary judgment on Nautilus's rescission claim.

Nautilus belatedly argues that Blagrave additionally made misrepresentations in the insurance policy application that justify rescission of the policy. Nautilus argues that Blagrave falsely answered "No" to questions asking whether she loaned or

15

rented machinery or equipment to others, whether she provided recreation facilities, and whether she sponsored sporting or social events.  See Ex. 2.  Because this argument was raised for the first time in the Reply, Local Rule 7.4 requires this court to disregard it.  See Local Rule 7.4 ("Any arguments raised for the first time in the reply shall be disregarded.").  Even if the court were to consider the argument, questions of fact would exist as to whether a horse boarding/riding business or any of its associated activities involves the loaning or renting of equipment to others, recreational facilities, or sporting or social events.  Even if Blagrave conducted horse shows on the property, it is unclear whether such an activity would involve the loaning or renting of equipment to others, recreational facilities, or sporting or social events.

        Hawaii courts have determined that questions about whether a misrepresentation was made can preclude summary judgment.  In Vannatta v. Pacific Guardian Life Insurance Co., 1 Haw. App. 294, 296, 618 P.2d 317, 320 (Ct. App. 1980), for example, the Intermediate Court of Appeals of Hawaii found an issue of fact as to whether a misrepresentation was made when an insured indicated on an insurance policy application that he had not, in the past 5 years, had medical or surgical advice or treatment or any departure from good health when, in fact, he had been diagnosed as having alcoholism and a passive aggressive

16

personality.  Here, a question of fact exists as to whether Blagrave made a misrepresentation at all.

        B.    The Court Declines to Determine the Legal Duties and Obligations Under the Policy.

Nautilus's policy covered "vacant land," but did not define what was meant by that term.  See Ex. 3.  Both Nautilus and Blagrave ask this court to determine whether Nautilus had a duty to defend and indemnify Blagrave in the state court suit brought by Wong and her husband.  Given the issue of fact as to whether Nautilus is entitled to rescission of the policy, the court declines to determine what the policy covers.  If the trier of fact determines that Blagrave did not make a misrepresentation entitling Nautilus to rescission, the court will entertain motions regarding the duty to defend and/or indemnify Blagrave, as well as other duties and obligations under the policy.

Construing the policy at this point would involve the court in making unnecessary determinations of state law that might affect matters far beyond this specific case.

        C.    Reformation.

Nautilus argues that the policy should be reformed because of its unilateral mistake of omitting a classification limitation endorsement as part of the policy.  On September 22, 2003, Sherry Ishikawa of Triad sent Tracey Lewis of GSL a commercial general liability quotation.  See Ex. B-6.  This letter indicated that Nautilus would provide the insurance for

17

$755.42 on certain terms and conditions, including a "CG2144 Designated Premises Endorsement."  Id.  On or about September 29 or 30, 2003, GSL accepted this offer on behalf of Blagrave.  See Ex. B-7.  Because the insurance policy lacked the designated premises endorsement, Nautilus argues that the policy should be reformed to add that endorsement.  This court need not reach that argument, as the reformation claim pled in the Complaint involved a different issue and cannot be read as placing the matter of the endorsement before the court.

>   D.   Bad Faith.

Hawaii recognizes the tort of bad faith in the first-party insurance context.  Best Place v. Penn Am. Ins. Co., 82 Haw. 120, 127, 920 P.2d 334, 341 (1996).  To state such a claim, the insured

> need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured. An unreasonable delay in the payment of benefits will warrant recovery for compensatory damages . . . . However, conduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith . . . . In addition, an erroneous decision not to pay a claim for benefits due under a policy does not by itself justify an award of compensatory damages . . . . Rather, the decision not to pay a claim must be in "bad faith."

Id. at 133, 920 P.2d at 347 (citations omitted).  A cause of action for bad faith exists in the first-party insurance context "whether the insurance carrier pays the claim or not, when its

18


conduct damages the very protection or security which the insured sought to gain by buying insurance." Id. at 132, 920 P.2d at 334.

After Blagrave tendered the state tort action to Nautilus, Nautilus erroneously denied coverage, claiming that Wong had not been injured during the policy period. See Ex. B-10 (letter from Katie Humphrey to Blagrave (Apr. 28, 2005)). Months later, on October 19, 2005, Nautilus, having been asked by Blagrave's counsel to reconsider, agreed to defend Blagrave under a reservation of rights. See Letter from Amy Nechamkin of Nautilus to Blagrave's attorney, Peter W. Olson (October 19, 2005) (attached as Ex. 8 to stipulated joint exhibits). Although Blagrave's homeowner's insurer had been defending her in the tort action, there is an issue of fact as to whether Nautilus delayed coverage in bad faith by falsely claiming that the accident had not occurred outside the policy period. The denial may have prejudiced Blagrave by, for example, forcing her to incur attorney's fees.[1]  This court leaves this matter for trial.

---

[1] At the hearing, Blagrave clarified that her bad-faith claim is not based on Nautilus's attempts to rescind the policy in and of itself.

V.  CONCLUSION.

For the reasons set forth above, the motions for summary judgment are denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 21, 2006.

/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Nautilus Insurance Company v. Blagrave, CIVIL NO. 05-00662 SOM/LEK; ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT